1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

17

| | |
|---|---|
| ADAM DUNAKIN, by and through his parent and next friend, KIMBERLEE HOLLINGER individually, and on behalf of similarly situated individuals,<br><br>             Plaintiff,<br><br>   v.<br><br>KEVIN W. QUIGLEY, in his official capacity as Secretary of the Washington State Department of Social and Health Services; and DOROTHY F. TEETER, in her official capacity as Director of the Washington State Health Care Authority,<br><br>           Defendants. | NO.  2:14-cv-00567<br><br>COMPLAINT<br>(CLASS ACTION) |

## I.  OVERVIEW

18

19

20

21

22

      1.      Defendants, and their agencies, the Health Care Authority and the Department of Social and Health Services, do not have an adequate system in place for persons with intellectual disabilities and related conditions living in privately-operated Medicaid-certified nursing facilities to be screened, assessed and/or receive specialized services, in violation of the

COMPLAINT (CLASS ACTION) - 1

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

Medicaid Act and the Nursing Home Reform Act (NHRA).  Defendants' systemic failures have caused plaintiff and putative class members to languish in institutional facilities, segregated from family and friends, without the services that they need to maximize their independence and without the opportunity to live in an integrated community-based setting.

2.      Plaintiff's counsel, Disability Rights Washington, has raised this issue with defendants repeatedly.   After Disability Rights Washington conducted an extensive investigation of Washington State's failure to comply with NHRA requirements at just the state-operated nursing facilities located at Lakeland Village, defendants disputed DRW's findings. Shortly thereafter, ***the federal government issued findings of over 40,000 violations of the NHRA requirements for just 27 individuals*** residing at Lakeland Village.  The problems found at Lakeland Village are just the tip of the iceberg.  Defendants' failure to implement NHRA requirements are systemic, statewide and occur in both state- and privately-operated nursing facilities.

3.      Defendants took action to address its NHRA violations in state-operated Medicaid nursing homes.   But they have left ***hundreds*** of Washington residents with developmental disabilities languishing without NHRA screening, assessment and specialized services at privately-operated nursing facilities.

4.      This litigation seeks injunctive and declaratory relief to require defendants to establish an adequate system to provide PASRR screenings, assessments, specialized services, and, when appropriate, community-based integrated placement for plaintiff and class members, all of whom reside in privately-operated Medicaid-certified Nursing facilities.   Without injunctive and declaratory relief, hundreds of individuals with developmental disabilities will

COMPLAINT (CLASS ACTION) - 2

continue to languish in institutions, isolated from their home communities, without the services they need to maximize their potential and live as independently as possible.

## II.  PARTIES

5.      ***Plaintiff Adam Dunakin.***  Plaintiff Dunakin is a thirty-four (34) year old adult with a developmental disability who resides at Everett Care and Rehabilitation Center, a privately-operated, Medicaid-certified nursing facility in Everett, Washington.  Mr. Dunakin is eligible for Medicaid as well as for services from the Developmental Disabilities Administration of the Washington State Department of Social and Health Services (DSHS).  Mr. Dunakin has been confined to a nursing home for nearly ***eight (8) years*** without being evaluated for the specialized services he needs to maximize his health and well-being as well as independence. He would prefer to live in his home community, if appropriate services to support him were offered by defendants.

6.      ***Defendant Kevin W. Quigley.***  Defendant Kevin Quigley is the Secretary of DSHS, the state agency that includes the Developmental Disabilities Administration.  DSHS, through the Developmental Disabilities Administration, is responsible for implementing the screening, evaluation and service delivery requirements under the Nursing Home Reform Act (NHRA) and the Medicaid Act for developmentally disabled individuals living in privately-operated Medicaid-certified nursing homes.  Mr. Quigley is sued in his official capacity only. All alleged acts by Mr. Quigley, DSHS and the Developmental Disabilities Administration were taken under color of state law.

7.      ***Defendant Dorothy F. Teeter.***  Defendant Dorothy Teeter is the Director of the Washington State Health Care Authority.  The Health Care Authority is the designated single state agency for Washington's Medicaid programs.  Ms. Teeter is responsible for ensuring that

COMPLAINT (CLASS ACTION) - 3

the Medicaid program is administered in a manner consistent with all state and federal laws, including the Medicaid Act and the NHRA. Ms. Teeter is sued in her official capacity only. All alleged acts by Ms. Teeter and the Health Care Authority were taken under color of state law.

### III.  JURISDICTION AND VENUE

8.      Jurisdiction of this Court arises under 28 U.S.C. § 1331 because this action arises under the laws of the United States, and 28 U.S.C. § 1343(3) and (4) which confer on the federal district courts original jurisdiction over all claims asserted pursuant to 42 U.S.C. § 1983 to redress deprivations of rights, privileges or immunities guaranteed by Acts of Congress and the United States Constitution.

9.      Venue is proper pursuant to 28 U.S.C. § 1391(b).  A substantial part of the events or omissions giving rise to plaintiff's claims occurred in the Western District of Washington and defendants may be found here.

### IV.  LEGAL FRAMEWORK

10.      More than twenty-five years ago, Congress passed the NHRA in order to end our nation's historical practice of inappropriately warehousing individuals with intellectual disabilities and related conditions in nursing facilities.  Congress concluded that thousands of residents in nursing facilities were being abused, neglected and given inadequate care, while many could live in less restrictive living situations in their home communities. The NHRA mandated that Medicaid recipients with intellectual disabilities and related conditions in nursing facilities be assessed to determine whether they could be served in a community-based setting, and offered specialized services needed to maximize their skills, abilities and independence. Around the country, passage of NHRA "opened the door" to community placement for many

COMPLAINT (CLASS ACTION) - 4

persons with intellectual disabilities who previously had no alternative to life in an institution. For others, the NHRA meant more fulfilling, more independent lives even if they continued to live in an institutional setting.

11. Under the NHRA, defendants are required to screen and assess individuals with intellectual disabilities and related conditions seeking admission or residing in Medicaid-certified nursing facilities, including privately-operated nursing facilities. This screening and assessment process is known as the Pre-Admission Screening and Resident Review (PASRR) process. 42 U.S.C § 1396r(e)(7)(A). Defendants must make two determinations: (1) whether nursing home placement is appropriate to the individual's needs; and (2) whether the individual would benefit from specialized services to meet their individualized needs for skill building and maintenance and/or to assist them to live in an integrated community setting. 42 U.S.C § 1396r(b); (e); 42 C.F.R. §§ 483.120; .126; .130; .132. Once an individual is assessed, NHRA obligates defendants to inform the individual about the availability of community based and specialized services and provide and/or arrange and pay for the specialized services that the individual is assessed to need. 42 U.S.C. § 1396r(e)(7)(A)-(C). In short, the NHRA provides a clear pathway to integrated, community-based placement and/or to services designed to maximize an individual's physical, mental and general well-being while living in a nursing facility.

12. In addition to the NHRA requirements, Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-12134, and the Rehabilitation Act of 1973, 29 U.S.C. § 794, are designed to ensure that individuals with disabilities receive their services in the least restrictive, most integrated setting appropriate. Defendants' failure to conduct the required NHRA screenings and assessments has resulted in the unnecessary and discriminatory

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

segregation of plaintiff and the putative class in restrictive nursing facilities.  Defendants' acts and omissions contravene the integration and nondiscrimination mandates of the ADA and Rehabilitation Acts.

13.     These federal laws, taken together, mandate that defendants establish a system for screening and assessing current and new privately-operated Medicaid-certified nursing home residents with intellectual disabilities and related conditions, and if needed, providing them with specialized services to promote their well-being and independence and/or community-based services as an alternative to nursing home placement.

## V.   CLASS ALLEGATIONS

14.     *Definition of Class*.  The class consists of all individuals who:

(a)     are or will be residents of Medicaid-certified, privately-operated nursing facilities in the State of Washington; and

(b)     who are Medicaid recipients with an intellectual disability or related condition(s) such that they are eligible to be screened and assessed pursuant to 42 U.S.C. § 1396r(e)(7) and 42 C.F.R. § 483.112 *et seq*.

15.     *Size of Class*.  The class of Medicaid recipients who reside in privately-operated, Medicaid-certified nursing facilities who are eligible for screening, assessment and services under the NHRA is expected to be so numerous that joinder of all members is impracticable. According to defendants, approximately 300 individuals have been identified as having a developmental disability and residing in privately-operated, Medicaid-certified nursing facilities.  *See* DDA 2014 Supplemental Budget, RHC Medicaid Compliance report, attached as *Appendix A*.

COMPLAINT (CLASS ACTION) - 6

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

16.     ***Class Representative Dunakin.***   Named plaintiff Adam Dunakin is diagnosed with a developmental disability and is a client of the Developmental Disabilities Administration of DSHS.   He has been admitted twice to privately-operated, Medicaid-certified nursing facilities since May 31, 2006.   At the first admission, the nursing facility identified that plaintiff Dunakin had a developmental disability and required further assessment.   At the second admission, the nursing home failed to identify that Dunakin had a developmental disability. Despite the initial screenings, defendants failed to conduct any further evaluations to determine (1) whether Mr. Dunakin could be served in a more integrated community setting; and (2) whether Mr. Dunakin needed specialized services.   No specialized services were ever provided.   No notices about the availability of specialized services or alternative community-based placement were provided.   For nearly eight years, Mr. Dunakin has languished in privately-operated nursing facilities without the services he needs to maximize his independence and, ultimately, live in the least restrictive setting in his home community.   His claims are typical of the claims of the other members of the class, and, through his mother and next friend, he will fairly and adequately represent the interests of the class.   There is no known conflict of interest among class members.

17.     ***Common Questions of Law and Fact***.   This action requires the determination of whether defendants violate the requirements under the NHRA, the ADA, the Rehabilitation Act, the Medicaid Act and the Fourteenth Amendment by failing to have a system in place to (1) properly determine whether plaintiff and the proposed class can be served in an integrated, less-restrictive community-based setting and/or need specialized services to maximize their abilities and independence; (2) provide, with reasonable promptness, specialized services identified by any such determinations to plaintiff and the proposed class and (3) provide adequate notice and

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

due process to plaintiff and the proposed class of their eligibility for Medicaid services (including placement in a less restrictive setting and specialized services) and their right to appeal any such determinations through an administrative fair hearing.

18.     ***Defendants Have Acted on Grounds Generally Applicable to the Class.*** Defendants, by failing to establish a system for appropriately screening, assessing and delivering specialized services to plaintiff and proposed class members in Medicaid-certified, privately-operated nursing facilities has acted on grounds generally applicable to the class, rendering declaratory relief appropriate respecting the whole class.  Certification is therefore proper under Fed. R. Civ. P. 23(b)(2).

19.     ***Questions of Law and Fact Common to the Class Predominate Over Individual Issues.***  Alternatively, the class may be certified under Fed. Civ. P. 23(b)(3).  The claims of the individual class members are more efficiently adjudicated on a class-wide basis.   Any interest that individual members of the class may have in individually controlling the prosecution of separate actions is outweighed by the efficiency of the class action mechanism. Upon information and belief, there has been no class action suit filed against these defendants for the relief requested in this action.  This action can be most efficiently prosecuted as a class action in the Western District of Washington, where defendants have their principal place of business, do business, and where Mr. Dunakin resides.  Issues as to defendants' conduct in applying standard policies and practices towards all members of the class predominate over questions, if any, unique to members of the class.  Certification is therefore proper under Fed. R. Civ. P. 23(b)(3).

20.     ***Class Counsel***.  Plaintiff has retained experienced and competent class counsel.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

# VI. BACKGROUND

21.     Due to statewide budget cuts, in October 2010, the state-operated intermediate care facility for persons with developmental disabilities at Lakeland Village was informed that it had to cut costs by as much as $1.8 million.  In response, Lakeland Village moved 27 residents from its intermediate care facility to its nursing facility, and reduced programs and staffing at both types of programs.

22.     Moving residents from an intermediate level of care to a nursing facility program resulted in a significant loss of services to the 27 individuals, since intermediate care facility placement requires that all residents receive "active treatment," while residents in nursing facilities only receive "specialized services" once they are screened and assessed under the NHRA requirements.

23.     Since 1989, CMS has forbidden states from making these types of cuts in services.  "[P]lacement by the State of individuals with [mental illness or intellectual disabilities] in nursing facilities as a means of avoiding responsibility for provision of the active treatment these individuals need will no longer be tolerated."  CMS, State Medicaid Manual, CMS Pub. 45, Chap. 4 § 4250 at 4-244 (Rev. 42, Mar. 1989), attached as *Appendix B*.  Nonetheless, defendants proceeded with the reductions in services.

24.     DRW conducted an extensive investigation into what happened to the 27 residents after their move.  On October 31, 2012, DRW reported its findings to defendant Quigley's predecessor, Robin Arnold-Williams.  DRW concluded that defendants were not meeting the NHRA requirements at Lakeland Village.  Defendants disagreed and hired a consultant to review their implementation of NHRA.  Ultimately, defendants informed the

COMPLAINT (CLASS ACTION) - 9

1   Center for Medicaid and Medicare Services (CMS), the federal agency overseeing Medicaid

2   programs about DRW's concerns.  CMS then conducted its own review.

3        25.     The federal agency concluded that defendants had systematically failed to

4   comply with the NHRA requirements at Lakeland Village.  "[W]e find that Lakeland Village

5   nursing facility is not in compliance with Section 1919 of the Act, is not in compliance with 42

6   CFR Part 483, that the remaining transferred Lakeland residents are not in an appropriate

7   setting, that the original transfer from the ICF/IID [Intermediate Care Facility for Individuals

8   with Intellectual Disabilities] violated federal law and that as a consequence the state has

9   received FFP [Federal Financial Participation, or the federal match for state payments for

10  Medicaid services] in error."  *See* Letter from Carol J.C. Peverly of CMS to defendant Teeter,

11  dated November 7, 2013, attached as *Appendix C*.  CMS also announced that it would widen its

    investigation to other state-operated, Medicaid-certified nursing facilities.

12       26.     Since November 2013, DDA and HCA have operated under a corrective action

13  plan with CMS related to state-operated Medicaid-certified nursing facilities.  *See e.g.,* DDA

14  Pre-Admission Screening and Resident Review (PASRR) Status Report, February 26, 2014,

15  located at http://www.dshs.wa.gov/ddd (last visited March 13, 2014).  The DDA correction plan

16  does ***not*** adequately address the needs of ***privately-operated*** nursing facility residents with

17  intellectual disabilities and/or related conditions to be thoroughly assessed to determine most

    appropriate placement and provided with specialized services..

18       27.     DDA admits as much.  In its 2014 Supplemental Budget, DDA requested (and

19  the Legislature approved) funds specifically allocated to provide required PASRR assessments

20  and services in the state-operated nursing facilities.  *See Appendix A*.  DDA noted in the request

21  that its corrective action plan (and the requested budget allocation) "do[es] not address the issue

22

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

of the approximately 300 people with a developmental disability who are currently in community nursing facilities."

28.     Plaintiff Dunakin's experience is typical of the proposal class.  He has a developmental disability that qualifies as an "intellectual disability or related condition" under the NHRA.

29.     On May 31, 2006, Mr. Dunakin was admitted to a privately-operated NF. Consistent with the NHRA, a pre-admission screening was conducted.  The screening properly identified that Dunakin was a person with a developmental disability and that additional evaluation was required.

30.     Despite the initial screening, no further evaluation was ever conducted by defendants.  No specialized services were provided to Mr. Dunakin.  No notice about the NHRA assessment, its determination or the availability of specialized services through Medicaid was ever provided to Mr. Dunakin or his mother.

31.     On June 11, 2007, Mr. Dunakin transferred to a new nursing home. Once again, Mr. Dunakin underwent a pre-admission screening.  This time, the screen mistakenly presumed that Mr. Dunakin's medical condition should exempt him from further assessment and failed to indicate that he has a developmental disability.  Since his admission, no evaluation of Mr. Dunakin's need for specialized services has been conducted.  Mr. Dunakin was never informed about the specialized services he could receive at the new nursing facility or that he may be able to receive services in a community-based setting.  Neither Dunakin nor his mother were provided with notice about the incorrect screening, the availability of further evaluation and specialized services, or the choices for community-based services.

COMPLAINT (CLASS ACTION) - 11

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

32.     Plaintiff Dunakin would like to receive the services he needs in a less-restrictive more integrated community based setting.  Plaintiff lived with his mother until age 26 when his nursing needs became too great for his mother to take care of at home without additional in-home supports, which were never offered.  Nonetheless, with access to specialized services, he would like to live in a community-based setting, such as a supported living program, where he can live and interact with people closer to his own age.  In the meantime, he would like specialized services in his nursing home so he can develop the independent living skills he needs to live outside of a nursing home.

### VII. CLAIMS FOR RELIEF

### FIRST CLAIM: DECLARATORY RELIEF FOR VIOLATIONS OF THE NURSING HOME REFORM ACT

33.     Plaintiff re-alleges the paragraphs above.

34.     Plaintiff and the class are entitled to declaratory relief pursuant to 42 U.S.C. §1983 that defendants have violated the Nursing Home Reform Act and its implementing regulations by failing to establish adequate policies, practices and procedures to ensure that plaintiff and the class receive the required PASRR screening, assessment, the provision specialized services and their choice of receiving services in the community rather than in nursing facilities.

### SECOND CLAIM: DECLARATORY RELIEF FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

35.     Plaintiff re-alleges the paragraphs above.

36.     Plaintiff and the putative class are all "qualified individuals with a disability" within the meaning of 42 U.S.C. § 12131(2).  Plaintiff and class members have not been assessed to determine what kinds of services they would need to live in an integrated setting in

COMPLAINT (CLASS ACTION) - 12

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

the community.  They have not been given the choice of remaining in the nursing facility or receiving appropriate services in the community.

37.     Defendant's acts and omissions effectively deny plaintiff and the proposed class the community-based services that they need in order to avoid continued segregation in an institution in violations of Title II of the ADA, 42 U.S.C. § 12132 and its implementing regulations.

38.     Defendants' "methods of administration" further have the effect of subjecting plaintiff and the class to discrimination on the basis of disability by subjecting them to unnecessary and unjustified segregation, in violation of 28 C.F.R. § 35.130 (b)(3).

39.     Defendants further discriminate against plaintiff and the class by denying them access to services based upon the severity of their disabilities, in violation of 28 C.F.R § 35.130 (b)(1). As a result, defendants relegate plaintiff and the class to segregated facilities in violation of the ADA.

## THIRD CLAIM:  DECLARATORY RELIEF FOR VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

40.     Plaintiff re-alleges the paragraphs above.

41.     Plaintiff and class members are qualified individuals with disabilities under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (a).  Defendants, HCA and DDA receive federal financial assistance.

42.     Defendants violate Section 504 of the Rehabilitation Act and its implementing regulations by denying plaintiff and class members access to integrated community-based programs appropriate to meet their needs and by requiring that plaintiff and class members be confined in segregated nursing facilities in order to receive the services that they need.

COMPLAINT (CLASS ACTION) - 13

**FOURTH CLAIM: DECLARATORY RELIEF FOR VIOLATIONS
OF TITLE XIX OF THE SOCIAL SECURITY ACT**

43.     Plaintiff re-alleges the paragraphs above.

44.     Plaintiff and the class are entitled to declaratory relief pursuant to 42 U.S.C. § 1983 that defendants have violated Title XIX of the Social Security Act by failing to provide Medicaid benefits to plaintiff and class members (1) with reasonable promptness, 42 U.S.C. § 1396a(a)(8); (a)(10)(A) and its implementing regulations; (2) in compliance with Medicaid comparability requirements, 42 U.S.C. § 1396a(a)(10)(B)(i) and (ii); 42 C.F.R. § 440.240; (3) with a meaningful choice of providers, including a choice between institutional and community based services, 42 U.S.C. § 1396n(c)(2)(B); (C); and (4) with adequate written notice of defendants' determinations, as well as their right to appeal to defendants' administrative hearing process, pursuant to 42 C.F.R. § 431.200 *et seq.*

**FIFTH CLAIM: DECLARATORY RELIEF FOR
CONSTITUTIONAL DUE PROCESS VIOLATIONS**

45.     Plaintiff re-alleges the paragraphs above.

46.     Defendants' actions deprive plaintiff and the class of rights, privileges and/or immunities secured to them by the Constitution, in violation of 42 U.S.C. § 1983.  Defendants' failure to provide adequate notice and access to an administrative hearing violates federal constitutional due process.

**SIXTH CLAIM: INJUNCTIVE RELIEF**

47.     Plaintiff re-alleges the paragraphs above.

48.     Plaintiff and the class are entitled to preliminary and permanent injunctive relief pursuant to 42 U.S.C. § 1983 to require defendants to fully implement the NHRA, ADA, Rehabilitation Act and Medicaid requirements as they apply to plaintiff and the proposed class.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

## VIII. DEMAND FOR RELIEF

WHEREFORE, plaintiff requests that this Court:

1.      Certify this case as a class action; designate the named plaintiff as class representative; and designate DISABILITY RIGHTS WASHINGTON, Susan Kas, and SIRIANNI YOUTZ SPOONEMORE HAMBURGER, Eleanor Hamburger, as class counsel;

2.      Declare that that defendants' failure to implement an adequate system for ensuring that PASRR screening, assessments, specialized services, due process notice and the choice of integrated community based services results in unnecessary segregation and institutionalization of plaintiff and the class, and violates the NHRA, Title II of the ADA, Section 504 of the Rehabilitation Act, the Medicaid Act and the 14th Amendment of the United States Constitution;

3.      Enjoin defendants from continued violations of the NHRA, Title II of the ADA, Section 504 of the Rehabilitation Act, the Medicaid Act and the 14th Amendment of the United States Constitution and require defendants to amend its policies, practices and procedures to ensure that plaintiff and the class are:

      (a)      properly screened and evaluated as required by the NHRA;

      (b)      provided with appropriate services with reasonable promptness;

      (c)      informed that they may be eligible for community-based services, and if eligible, that they have the right to choose to receive such services in an institutional or integrated community setting; and

      (d)      provided, as appropriate, with long-term care services and supports in the community with reasonable promptness;

4.      Enter judgment in favor of plaintiff and the class;

COMPLAINT (CLASS ACTION) - 15

5.      Award plaintiff and the class their attorney fees and costs; and

6.      Award such other relief as is just and proper.

DATED:  April 16, 2014.

DISABILITY RIGHTS WASHINGTON

_/s/ Susan Kas_
Susan Kas (WSBA #36592)
315 – 5th Avenue South, Suite 850
Seattle, WA  98104
Tel. (206) 324-1521; Fax (206) 957-0729
Email:   susank@dr-wa.org


SIRIANNI YOUTZ
SPOONEMORE HAMBURGER

_/s/ Eleanor Hamburger_
Eleanor Hamburger (WSBA #26478)
999 Third Avenue, Suite 3650
Seattle, WA 98104
Tel. (206) 223-0303; Fax (206) 223-0246
Email:   ehamburger@sylaw.com

Attorneys for Plaintiff

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington   98104
(206) 324-1521 · Fax: (206) 957-0729