1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  ADAM DUNAKIN,

11                    Plaintiff,

12           v.

13  KEVIN W. QUIGLEY, et al,,

14                    Defendants.

CASE NO. C14-0567JLR

ORDER DENYING
DEFENDANTS' MOTION FOR
RECONSIDERATION

15                    **I.     INTRODUCTION**

16        Before the court is Defendants' motion for reconsideration (Mot. (Dkt. # 45)) of

17  two aspects of the court's April 10, 2015, order (4/10/15 Order (Dkt. # 43)).  First,

18  Defendants ask the court to reconsider its denial of their motion to dismiss or to grant

19  partial summary judgment on the fourth claim in Plaintiff Adam Dunakin's complaint,

20  which alleges violations of certain provisions of Title XIX of the Social Security Act.

21  (Mot. at 1, 2-4.)  Second, Defendants ask the court to reconsider its ruling granting partial

22  summary judgment to Mr. Dunakin.  (Mot. at  1, 5-6.)  The court has reviewed the

1 motion, all submissions filed in support thereof and opposition thereto, the balance of the

2 record, and the applicable law.  Being fully advised, the court DENIES Defendants'

3 motion.

4 **II.    DISCUSSION**

5 **A.  Standards for Reconsideration**

6 Motions for reconsideration are disfavored.  Local Rule W.D. Wash. LCR 7(h)(1).

7 The court will ordinarily deny such motions unless the moving party demonstrates (1)

8 manifest error in the prior ruling, or (2) new facts or legal authority which could not have

9 been brought to the attention of the court earlier with due diligence.  *Id.*  As discussed

10 below, the court concludes that Defendants have made neither showing and no other

11 extraordinary considerations warrant reconsideration of the court's prior order.

12 **B.  The Court's Order Denying Defendants' Motion to Dismiss or Grant Partial Summary Judgment on Claim Four**

13

14 Defendants' motion for reconsideration concerning claim four of Mr. Dunakin's

14 complaint relates solely to footnote 11 in the court's order.  (*See* Mot. at 2-3 (citing

15 4/10/15 Order at 35, n.11).)  In his complaint, Mr. Dunakin asserts that Defendants

16 violated Title XIX of the Social Security Act by failing to provide Medicaid benefits with

17 reasonable promptness.  (Compl. (Dkt. # 1) ¶ 44.)  In their motion, Defendants argued

18 that the court should dismiss this claim because the Social Security Act requires only that

19 Defendants promptly pay for Medicaid-covered services and not that they arrange for or

20 provide such services.  (Rule 12(c) Mot. (Dkt. # 24) at 16-17 (citing 42 U.S.C.

21 § 1396a(a)(8) and 42 U.S.C. § 1396d(a).)  Defendants argued that the Medicaid Act

22

ORDER- 2

1  required "prompt processing of applications and prompt payment for services," and Mr.

2  Dunakin "improper[ly] . . . conflate[d] the provision of services with how they are paid

3  for . . . ." (*Id.* at 17.)

4      In the alternative, Defendants also argued that the court should grant partial

5  summary judgment on this issue because Mr. Dunakin's complaint did "not identify any

6  such benefits that were untimely, or that he was denied." (*Id.* at 22.)  Specifically,

7  Defendants argued that there were no genuine issues of fact remaining because Mr.

8  Dunakin did "not identif[y] Medicaid services that he was denied, and he was not in fact

9  denied services as related to this case." (*Id.*)

10      In response, Mr. Dunakin pointed out that Defendants were relying on a defunct

11  version of 42 U.S.C. § 1396d(a) and that the revised provision clarifies that "medical

12  assistance" includes both payment of services and "the care and services themselves."

13  (Rule 12(c) Resp. (Dkt. # 40) at 26 (quoting 42 U.S.C. § 1396d(a)).)  Defendants then

14  dropped this argument entirely in their reply memorandum, instead asserting that Mr.

15  Dunakin "confuses PASRR [Pre-Admission Screening and Resident Review] with

16  Medicaid," and that "PASRR is not a Medicaid service." (Rule 12(c) Reply (Dkt. # 42)

17  at 10.)

18      The court agreed with Mr. Dunakin that Defendants relied on an outdated version

19  of 42 U.S.C. § 1396d(a).  (4/10/15 Order at 34.)  The court held that by amending the

20  definition of "medical assistance" Congress "intended 'to clarify that where the Medicaid

21  Act refers to the provision of services, a participating State is required to provide (or

22  ensure the provision of ) services, not merely pay for them.'" (*Id.* (quoting *John B. v.*

1    *Emkes*, 852 F. Supp. 2d 944, 951 (M.D. Tenn. 2012).)  Accordingly, the court denied

2    Defendants' motion to dismiss Mr. Dunakin's claim for failure to provide Medicaid

3    services with reasonable promptness.

4         The court also stated in a footnote that it would not consider Defendants'

5    argument that the court should dismiss Mr. Dunakin's claim because PASRR is not a

6    Medicaid service or benefit.  (4/10/15 Order at 35, n.11.)  The court first noted that it was

7    not obligated to consider the argument because Defendants did not raise it until their

8    reply memorandum.  (*See id.* (citing *In re Rains*, 428 F.3d 893, 902 (9th Cir. 2005).)

9    Nevertheless, the court also concluded that PASRR was "medical assistance" under the

10   Medicaid Act.  (*Id.*)  Defendants now challenge both of those rulings.  (*See* Mot. at 2-4.)

11         First, Defendants assert that "foundational to [the] argument" in their motion that

12   Mr. Dunakin failed to identify any services he was denied under the Medicaid program

13   "is the understanding that PASRR screening is *not* medical assistance."  (Mot. at 2.)

14   Thus, Defendants essentially assert that the argument they expressly set forth in their

15   reply memorandum was implicit in their original motion.  (*See* Mot. at 2-3.)  The court

16   disagrees.  The argument is simply not in their opening memorandum, implicit or

17   otherwise.  Indeed, one might argue that Defendants implicitly acknowledged that

18   PASRR was medical assistance or services under the Medicaid Act when they asserted

19   that the Medicaid Act required "prompt processing of applications and prompt payment

20   for services," and Mr. Dunakin "improper[ly] . . . conflate[d] the provision of services

21   with how they are paid for . . . ."  (Rule 12(c) Mot. at 17.)

22

Nevertheless, even if the court was required to reach the issue, it would come to the same conclusion. Instead of disposing of the issue in a footnote, however, the court will provide more extensive reasoning in response to Defendants' motion to reconsider. First, the Nursing Home Reform Act ("NHRA") was enacted as an amendment to the Medicaid Act of 1987. *See Grammer v. John J. Kane Reg'l Centers-Glen Hazel*, 570 F.3d 520, 523 (3d Cir. 2009). Congress passed the NHRA, in part, to ensure that Medicaid-eligible nursing home residents with intellectual disabilities and related conditions received the active treatment they needed. *See Rolland v. Romney*, 318 F.3d 42, 46 (1st Cir. 2003).

The NHRA mandates that all State Medicaid Plans provide for PASRR. *See* 42 U.S.C. § 1396r(e)(7)(A)(i); 42 U.S.C. § 1396a(a)(28)(D)(i). Washington State's Medicaid plan includes PASRR as one of its Medicaid programs. (5/15/15 Hamburger Decl. (Dkt. # 54) ¶ 3, Ex. A ("Medicaid (Title XIX) State Plan") ¶ 4.39.) The State Medicaid Plan states that "[t]he State does not claim as 'medical assistance under the State Plan' the cost of services to individual [sic] who should receive preadmission screening or annual resident review *until* such individuals are screened or reviewed." (*Id.* ¶ 4.39(c) (italics added).) Indeed, PASRR specialized services are specifically defined in the State Plan so that claims for "medical assistance" may be submitted for them. (*See id.* ¶ 4.39(e); *id.* at "Attachment 4.39") Indeed, one of Defendants' Federal Rule of Civil Procedure 30(b)(6) deponents has testified that PASRR is a Medicaid program. (10/17/14 Hamburger Decl. (Dkt. # 21) Ex. E (Hehemann Rule 30(b)(6) deposition) at 13:8-12 ("PASRR is a Medicaid program.").) This same deponent has acknowledged

ORDER- 5

1   that, although the State presently funds PASRR services, federal financial participation is

2   available, and the State presently is "in the process" of applying for a State Medicaid Plan

3   amendment that would provide federal matching funds for PASRR services.  (5/15/15

4   Hamburger Decl. Ex. B at 183:23-185:6.)

5          The Ninth Circuit has stated that the definition of "medical assistance" under the

6   Medicaid Act has four key elements:  (1) federal funds; (2) to be spent in "payment of

7   part or all of the cost"; (3) of certain services; (4) for or to "[p]atients meeting the

8   statutory requirements for Medicaid."  *Univ. of Wash. Med. Ctr. v. Sebelius*, 634 F.3d

9   1029, 1034-35 (9th Cir. 2011).  Mr. Dunakin propones the court's use of this test.  (Resp.

10  (Dkt. # 53) at 5.)  Defendants do not dispute the test's applicability—only the outcome of

11  its application.  (*See* Reply (Dkt. # 55) at 4).  The court considers each factor.

12         The fourth factor is met.  Mr. Dunakin and all class members are Medicaid

13  recipients and PASRR applies to them to meet statutory requirements.  (*See* Kreiger Decl.

14  (Dkt. # 30) ¶ 5 ("Adam Dunakin has been enrolled in Medicaid . . . since at least January

15  1, 2010."); Compl. (Dkt. # 1) ¶ 14 (defining the class in part as "Medicaid recipients with

16  an intellectual disability or related condition(s) such that they are eligible to be screened

17  and assessed pursuant to 42 U.S.C. § 1396r(e)(7) and 42 C.F.R. § 483.122 *et seq.*").)

18  Defendants argue that the fourth factor is not met because PASRR is not restricted solely

19  to Medicaid-eligible individuals but can also result in the provision of services to non-

20  Medicaid-eligible individuals residing in Medicaid-certified nursing facilities.  (Mot. at 4

21  (citing 42 U.S.C. § 1396r(e)(7)(A)); Reply at 4.)  Defendants, however, do not explain

22  why factor four is not satisfied simply because PASRR may also encompass or benefit

1   non-Medicaid-eligible individuals in addition to Medicaid-eligible patients.  The court

2   agrees with Mr. Dunakin that this factor is met.

3           The court also concludes that factors one and two are met in the context of

4   Defendants' motions here.  Mr. Dunakin has submitted evidence to the court that,

5   although Defendants presently pay for PASRR services out of state funds, they are in the

6   process of applying for federal matching funds for their provision of PASRR services.

7   (5/15/15 Hamburger Decl. Ex. B at 183:23-185:6.)  Thus, federal funds are apparently

8   available "to be spent in 'payment of part or all of the cost,'" *see id.* at 1034 (quoting 42

9   U.S.C. § 1396d(a)), for PASRR services, and Defendants are actively seeking those

10  funds.  This statutory authority and evidence are sufficient with respect to these factors in

11  the context of the court's order denying Defendants' motion to dismiss or for partial

12  summary judgment.

13          Finally, the court concludes that the third element—"of certain services"—also is

14  met.  The Medicaid Act defines "medical assistance" by delineating a list of services.

15  *See* 42 U.S.C. § 1396d(a)(1)-(29).  The list includes "(13) other diagnostic, screening,

16  preventive and rehabilitative services,  including -- . . . (C) any medical or remedial

17  services (provided in a facility, a home, or other setting) recommended by a physician or

18  other licensed practitioner of the healing arts . . . , for the maximum reduction of physical

19  or mental disability and restoration of an individual to the best possible functional level."

20  42 U.S.C. § 1396d(a)(13)(C).  Defendants never explain why PASRR screening and

21

22

ORDER- 7

1   specialized services do not fall within the category of "other diagnostic, screening,

2   preventive and rehabilitative services."[1]  The court can find no reason why they do not.

3       Indeed, the State Medicaid Manual confirms that Medicaid can be used to fund

4   particular specialized services:

5       Although Medicaid payment may not be made for active treatment services
        as NF [nursing facility] services, States may use other Medicaid benefits to
6       fund aspects of active treatment programs for individuals with MI [mental
        illness] or MR [mental retardation] who are in a NF.  For example, services
7       provided in the context of rehabilitation services, clinic services, or
        physical, occupational, or speech therapy services optional benefits might
8       be used to meet some of the more discrete services required by the
        resident's active treatment program if these optional services are available
9       under the State plan or the State wishes to add them . . . .

10  (5/15/15 Hamburger Decl. Ex. C (excerpts of State Medicaid Manual) at 22 (§ 4240.2).)

11  _____

12      [1] At best, in a footnote, Defendants declare, without citation to either legal or evidentiary
    authority:  "To be clear, a Level I or Level II [PASRR screening] does not constitute "medical or
13  remedial services . . . recommended by a physician or other licensed practitioner."  (Reply (Dkt.
    # 55) at 3, n.1.)  Defendants' statement, no matter how definitive, does not make it so without
14  some basis in factual or legal authority.  Moreover, "[m]edical or remedial services . . .
    recommended by a physician or other licensed practitioner" is only one of three examples of
15  "other diagnostic, screening, preventive and rehabilitative services," that are listed following the
    provision's use of the term "including" and that may constitute "other diagnostic, screening,
16  preventive, and rehabilitative services" under the statute.  See 42 U.S.C. § 1396d(a)(13).  The
    statue's use of the term "including" "impl[ies] that the [items] listed immediately afterwards are
17  an inexhaustive list of examples, rather than a bounded set of applicable [items]."  In re Mark
    Anthony Constr., Inc., 886 F.2d 1101, 1106 (9th Cir. 1989) (citing Puerto Rico Maritime
18  Shipping Authority v. I.C.C., 645 F.2d 1102, 1112 n.5 (D.C. Cir. 1981) (stating that it is
    "hornbook law" that a list following the word "including" is "illustrative, not exclusive")); see
19  also West v. Gibson, 527 U.S. 212, 217 (1999) ("[T]he preceding word 'including' makes clear
    that the authorization is not limited to the specified remedies there mentioned."); United States v.
20  Canada, 110 F.3d 260, 263 (5th Cir. 1997) (stating that the term "includes" indicates a non-
    exhaustive list); Matter of Cash Currency Exchange, Inc., 762 F.2d 542, 552 (7th Cir. 1985)
21  (stating that "includes" or "including" demonstrates that Congress "intended to make the list . . .
    illustrative rather than exhaustive.").  Thus, even if Defendants are correct, and PASRR
22  screening or services do not constitute "medical or remedial services . . . recommended by a
    physician or other licensed practioner," one cannot necessarily conclude that PASRR screening
    and services do not fall within the broader category of "other diagnostic, screening, preventive,
    and rehabilitative services."  See 42 U.S.C. § 1396d(a)(13).

1    In addition, the Manual states that "States could use other optional Medicaid services

2    such as case management or personal care services to coordinate some components of an

3    active treatment program or to provide the support services needed for community

4    placement." (*Id.*)

5        The list for "medical assistance" also includes "case-management services."  42

6    U.S.C. § 1396d(a)(19).  "Case management services" means "services which will assist

7    individuals eligible under the plan in gaining access to needed medical, social,

8    educational, and other services."  42 U.S.C. § 1396n(g)(2).  Mr. Duankin argues that

9    PASRR screening falls within this provision.  (Resp. at 6.)  Defendants never address this

10   argument.  (*See generally* Reply.)  The court agrees that PASRR screening fits within this

11   description of "case management services."

12       Finally, Defendants assert that the court should have granted partial summary

13   judgment on Mr. Dunakin's fourth claim because Defendants have paid or approved all

14   of his Medicaid claims since he was enrolled in 2010.  (*See* Mot. at 4 (citing Kreiger

15   Decl. ¶ 5).)  Although Defendants acknowledge that Mr. Dunakin complains that

16   "Defendants have not provided 'specialized services' under PASRR," they argue that he

17   has not identified the services he would like or ever asked for them.  (*Id.*)  On this basis,

18   Defendants argue that they are entitled to partial summary judgment on this claim.  (*Id.*)

19       Mr. Dunakin responds that PASRR mandates that Defendants identify and

20   evaluate individuals for services made available through a PASRR screening and

21   evaluation.  (Resp. at 7 (citing 42 C.F.R. § 483.128(a)).)  Indeed, 42 C.F.R. § 483.128(a)

22   states in pertinent part:

> Level I:  Identification of individuals with MI or IID. The State's PASARR program must identify all individuals who are suspected of having MI or IID as defined in § 483.102. This identification function is termed Level I. Level II is the function of evaluating and determining whether NF services and specialized services are needed.

*Id.*  The court agrees that this regulation places the obligation on Defendants to "identify" individuals suspected of having mental illness or intellectual disability, and then evaluate and determine whether specialized services are needed.  Accordingly, the court denies Defendants' motion for reconsideration of the court's denial of partial summary judgment on this issue.

### C.  The Court's Order Granting Partial Summary Judgment in Mr. Dunakin's Favor

The court's ruling granting partial summary judgment to Mr. Dunakin was narrow. The court granted partial summary judgment only as follows:  (1) Defendants violated the NHRA and implementing regulations when they used state regulations (as described in the order) to evaluate Mr. Dunakin's and other class members' eligibility under PASRR, and (2) Defendants must employ the standards contained in the federal regulations when evaluating Mr. Dunakin and members of the class for PASRR purposes.  (4/10/15 Order at 71.)  That is the extent of the court's ruling on partial summary judgment. Nevertheless, Defendants ask the court to reconsider rulings that individuals were harmed by the use of the wrong standard and that the violation is ongoing such that declaratory and injunctive relief is appropriate.  (*See* Mot. at 5.)  The court has made no such rulings. No party asked for any such rulings or presented argument or evidence on these issues. No such rulings on partial summary judgment appear in the court's order.  (*See generally*

1  4/10/15 Order.)  Defendants essentially ask the court to reconsider rulings on partial

2  summary judgment that it did not make.  The court declines to reconsider rulings that it

3  did not make.

4         With respect to the rulings the court did make, Defendants acknowledge that there

5  is a difference between the federal definition under PASRR of intellectual disability and

6  state eligibility requirements.  (PSJ Resp. (Dkt. # 23) at 7.)  They further acknowledge

7  that they previously conflated the two standards and erroneously applied the state

8  standard to implement PASRR.  (*See id.*; *see also* 11/10/14 Hehemann Decl. (Dkt. # 28)

9  ¶ 7; Mot. at 4-5 ("The sole issue presented by Plaintiff's motion . . . is whether . . .

10  Defendants violate the [NHRA] if they do not use the federal definition of 'intellectual

11  disability and related conditions.'  The Defendants agree that the answer is yes.").)

12  Indeed, Defendants' Federal Rule of Civil Procedure 30(b)(6) testimony indicates that

13  until at least September 2014, Defendants believed that the only distinction between the

14  state and federal regulations was the required age of onset.  (*See id.* Ex. E (Hehemann

15  Rule 30(b)(6) deposition) at 82:16-83:1, 83:24; *id.* at 140:10-15; *id.* at 154:5-9; *id.* Ex. H

16  at 87:12-88:3.)  Thus, Defendants' admission or acknowledgment of a distinction

17  between the federal definition of intellectual disability and the state eligibility

18  requirements must have come sometime after September 2014.  Mr. Dunakin received

19  PASRR Level I screenings in 2006 and 2008.  (10/17/14 Hamburger Decl. (Dkt. # 21)

20  Exs. G, M.)  In addition, Defendants had contact with Mr. Dunakin with the intent of

21  conducting a PASRR evaluation in April 2014.  (*See* 10/17/14 Hamburger Decl. (Dkt. #

22  21) Ex. H (Watling Rule 30(b)(6) deposition) at 15:14-18:6.)  Defendants do not dispute

1 | this evidence.  Thus, at all of the times that Mr. Dunakin was screened or evaluated for
2 | PASRR purposes, Defendants had not yet acknowledged the distinction between state
3 | and federal eligibility standards with regard to the definition of intellectual disability.
4 | Based on the foregoing, the court declines to reconsider the narrow rulings described
5 | above granting partial summary judgment to Mr. Dunakin.  Accordingly, the court denies
6 | Defendants' motion.

### III.     CONCLUSION

For the reasons stated above, the court DENIES Defendants' motion for

reconsideration (Dkt. # 45).

Dated this 1st day of July, 2015.

JAMES L. ROBART
United States District Judge

ORDER- 12